The document below is hereby signed.

Signed: September 14, 2010.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re | ) |
| | ) |
| CAPITOL HILL GROUP, | )    Case No. 02-00359 |
| | )    (Chapter 11) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| PILLSBURY WINTHROP SHAW | ) |
| PITTMAN, LLP, | ) |
| | ) |
| Plaintiff, | ) |
| | )    Adversary Proceeding No. |
| v. | )    10-10027 |
| | ) |
| CAPITOL HILL GROUP, | )    **Not for Publication in** |
| | )    **West's Bankruptcy Reporter** |
| Defendant. | ) |

MEMORANDUM DECISION RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In the bankruptcy case within which this adversary
proceeding is being pursued, Shaw Pittman LLP, now known by way
of merger as Pillsbury Winthrop Shaw Pittman LLP, represented the
debtor, Capitol Hill Group, as its counsel from approximately
February 21, 2002 until approximately January 7, 2004.  Shaw
Pittman, as the plaintiff in this adversary proceeding, seeks to
recover attorney's fees incurred in defending against a
malpractice lawsuit filed against it in 2007 by Capitol Hill

Group with respect to services Shaw Pittman rendered to Capitol Hill Group in front of the District of Columbia Board of Zoning Adjustment (sometimes referred to as the BZA) during the pendency of the bankruptcy case and prior to December 2003.

Shaw Pittman contends that it is entitled to such fees pursuant to an agreement by Capitol Hill Group not to object to Shaw Pittman's fee applications in the bankruptcy case for attorney's fees that had been billed prior to December 15, 2003. (As of that date, fees had been billed through November 30, 2003.) That agreement included an obligation on the part of Capitol Hill Group to reimburse Shaw Pittman for any additional fees Shaw Pittman incurred if Capitol Hill Group objected to those fee applications in violation of the agreement.

Shaw Pittman has moved for summary judgment. This decision views the evidence in the light most favorable to the opposing party, Capitol Hill Group, and concludes that the agreement required only that Capitol Hill Group not contest Shaw Pittman's fee applications for services rendered through November 30, 2003, and did not purport to address any malpractice claims that Capitol Hill Group might later pursue against Shaw Pittman even if relating to the services that were the subject of those fee applications. Accordingly, Shaw Pittman's motion for summary judgment must be denied.

I

On February 21, 2002, Capitol Hill Group commenced its
bankruptcy case by filing a voluntary petition under chapter 11
of the Bankruptcy Code, with Shaw Pittman acting as its counsel.
On October 30, 2003, Shaw Pittman filed a brief on behalf of
Capitol Hill Group in an appeal by Stanton Park Neighborhood
Association pending before the Board of Zoning Adjustment
regarding the number of parking spaces that Capitol Hill Group's
tenants were required to maintain under their certificates of
occupancy.  In July and November 2003, Shaw Pittman represented
Capitol Hill Group at hearings in that proceeding before the
Board of Zoning Adjustment.  Capitol Hill Group later contended
in its malpractice lawsuit commenced in 2007 that Shaw Pittman
committed malpractice by not raising a historic designation
argument based on a municipal regulation.

On November 14, 2003, Shaw Pittman filed its first fee
application in the bankruptcy case, seeking compensation for
services rendered of $1,094,868 and reimbursement of expenses of
$138,530, for the period of February 21, 2002, through October
31, 2003.  By December 15, 2003, Shaw Pittman had also billed
Capitol Hill Group for fees and expenses through the period of
November 1, 2003 to November 30, 2003, but had not yet filed an
application for those fees and expenses.

The court held a hearing on December 15, 2003, to address a

motion regarding when Capitol Hill Group's plan would be allowed to become effective. At that hearing, Shaw Pittman could have sunk Capitol Hill Group's attempt to have its confirmed plan become effective by objecting that Shaw Pittman's fees were not being paid by the effective date of the plan. As this court later found, however, Capitol Hill Group and Shaw Pittman reached an agreement on December 15, 2003, under which:

(1) Shaw Pittman would not raise at the hearing on that date an objection to Capitol Hill Group's plan becoming effective;

(2) out of the funds being received from a lender to finance the plan, Capitol Hill Group would immediately pay Shaw Pittman $850,000 of the fees sought by its first fee application;

(3) Capitol Hill Group was to grant Shaw Pittman a security interest in certain property to secure the balance of the fees;

(4) Capitol Hill Group agreed not to object to the applications for fees that had been billed as of December 15, 2003 (the last bill having been for a period ending on November 30, 2003); and

(5) Capitol Hill Group agreed to pay Shaw Pittman's attorney fees incurred in any fight regarding such fee applications.

4

The agreement arose from an offer contained in a series of e-mails that this court ruled Capitol Hill Group had accepted by its silence at the hearing of December 15, 2003. The District Court upheld this court's ruling that such an agreement had been reached. *Capitol Hill Group v. Shaw Pittman LLP (In re Capitol Hill Group)*, 313 B.R. 344 (D.D.C. 2004).

Capitol Hill Group did not file an objection to Shaw Pittman's first fee application, and on December 15, 2003, the court signed an order granting that application as unopposed, awarding the fees and expenses on an interim basis, meaning that the award remained subject to review by the court anew upon the filing of a final fee application.

On January 6, 2004, the Board of Zoning Adjustment entered an order denying Stanton Park Neighborhood Association's appeal (and it was not until February 24, 2004, that the Board reconsidered its ruling in a manner adverse to Capitol Hill

Group).[1]  On January 7, 2004, the court entered an order pursuant to which Shaw Pittman withdrew as counsel for Capitol Hill Group as of that date.

On January 12, 2004, Shaw Pittman filed its Second Interim and Final Fee Application, seeking an award for the period of November 1, 2003 through January 7, 2004.  That application, in other words, included the amounts that had been billed prior to December 15, 2003, for services performed and expenses incurred from November 1, 2003, through November 30, 2003.

If Capitol Hill Group had lived up to its bargain and not objected to the fee application, Shaw Pittman would have obtained an order of the court allowing its fees and expenses for services rendered through November 30, 2003, without having to engage in litigation regarding the propriety of those fees and expenses.

---

[1]  As explained by the Court of Appeals:

> Initially CHG was told it would have to provide 225 parking spaces, but in March 2003 the Zoning Administrator decided 85 spaces would suffice.  In January 2004, after a neighborhood association appealed, the Board of Zoning Adjustment (BZA) affirmed, but then decided to reconsider its ruling. On February 24, 2004, the BZA finally settled on a total of 177 spaces, an announcement it made orally. The ruling was not issued in written form until September 9, 2004 . . . .

*Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 487 (D.C. Cir. 2009).  Shaw Pittman has dropped its claim for attorney's fees for work defending against the claim in the malpractice lawsuit that Shaw Pittman committed malpractice by failing to notify Capitol Hill Group of the adverse written ruling.

6

Shaw Pittman could have then proceeded to enforce that award as it saw fit without all of the delay that a contested fee application entails.

But Capitol Hill Group did not live up to its agreement. Instead, on January 30, 2004, Capitol Hill Group filed an objection (Dkt. No. 486) to the final fee application.  The objection noted "that Debtor is filing this Objection with regard to the totality of fees billed by Shaw Pittman in this matter." An accompanying motion (Dkt. No. 487) (incorporated by reference into the objection) made clear that this meant that Capitol Hill Group was objecting not only to the fees incurred from November 1, 2003, to January 7, 2004, but also to the fees for the period of February 21, 2002, through October 31, 2003, that this court's order of December 15, 2003, had awarded on only an interim basis.[2] No one else filed an objection to the final fee application.

Capitol Hill Group pressed its objections at several hearings conducted by this court in February, March and April 2004.  With respect to fees and expenses relating to services rendered through November 30, 2003, this court ruled that Capitol Hill Group's objection to the fee application violated the

---

[2]  The motion sought to delay the hearing on the final fee application, and included as examples of excessive fees amounts that Shaw Pittman had charged for services rendered in July 2003, a period covered by the first fee application.  Mtn. (Dkt. No. 487) at 3-7.

parties' agreement, and struck the objection with respect to those fees and expenses.  The court examined the fee application and determined that the fees and expenses sought for services rendered through November 30, 2003, were reasonable. Accordingly, by an order of April 9, 2004, the court granted as a final order the fee application for services rendered through November 30, 2003, in the amount of $240,329.47.  (Dkt. No. 589.)

On April 27, 2004, the court entered an order (Dkt. No. 626) granting in an agreed reduced amount the balance of Shaw Pittman's final fee application (*i.e.*, the portion of the application that covered fees and expenses for services from December 1, 2003, through January 7, 2004, the fees that were *not* subject to any agreement for Capitol Hill Group not to object to the fee application).

In the meantime, Capitol Hill Group appealed the order of April 9, 2004, that allowed the portion of the final fee application seeking fees for services through November 30, 2003. In August 2004, the District Court affirmed the fee award and remanded with instructions that Capitol Hill Group be ordered to pay Shaw Pittman its fees incurred defending against Capitol Hill Group's prohibited objections to the fee applications, including fees incurred on the appeal. *Capitol Hill Group*, 313 B.R. at 357-58.  Shaw Pittman was also entitled to certain attorney's fees under the security agreement it obtained, and sought those

8

fees as well.

This court awarded Shaw Pittman both types of fees and expenses (those due under the contract and those due under the security agreement), including attorney's fees and expenses incurred in recovering such fees and expenses, the first such award being one pursuant to an oral decision of October 22, 2004, resulting in a judgment entered on December 2, 2004 (Dkt. No. 733); the second award being pursuant to a judgment entered on August 2, 2005 (Dkt. No. 891); the third award being pursuant to a stipulated judgment entered on September 14, 2005 (Dkt. No. 945); and the final award being set forth in a stipulated judgment entered on October 5, 2005 (Dkt. No. 954). At no time did Capitol Hill Group contend that malpractice in the BZA proceeding was a defense, by way of setoff, to the amounts that Shaw Pittman sought, but it did raise professional responsibility arguments in contesting the fees Shaw Pittman sought.

In the interim, on August 3, 2005, Shaw Pittman had filed a complaint commencing Adversary Proceeding No. 05-10050 against Capitol Hill Group and others seeking to enforce Shaw Pittman's rights under a security agreement that had been granted to Shaw Pittman to secure payment of its fees. Eventually, without the necessity of the court's granting any relief in the adversary proceeding, all of the fees awarded to Shaw Pittman were paid. Capitol Hill Group thus sought to have the adversary proceeding

9

dismissed.   Shaw Pittman objected to that request unless it were given assurances that Capitol Hill Group would not sue Shaw Pittman, and it requested leave to amend its complaint to seek a declaratory judgment that all claims against Shaw Pittman were now barred by res judicata.   At a hearing of April 12, 2006, the court overruled Shaw Pittman's objection and dismissed the adversary proceeding without prejudice, noting that Shaw Pittman could defend on the basis of res judicata if Capitol Hill Group were to sue Shaw Pittman after having failed in all of the fee litigation ever to raise any claims against Shaw Pittman as a setoff against Shaw Pittman's fee claims.

On September 7, 2007, Capitol Hill Group initiated its malpractice lawsuit in the D.C. Superior Court seeking no less than $50 million and alleging additional fiduciary duty breaches and malpractice by Shaw Pittman arising from the services rendered by Shaw Pittman to Capitol Hill Group as its counsel in the bankruptcy case.   On September 5, 2008, after the malpractice lawsuit was removed to federal court, the District Court (ruling on Shaw Pittman's motion to dismiss and in the alternative for summary judgment) granted summary judgment and dismissed Capitol Hill Group's complaint on the basis of res judicata.   *Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, LLP*, 574 F. Supp. 2d 143 (D.D.C. 2008), *aff'd*, 569 F.3d 485 (D.C. Cir. 2009).

Shaw Pittman then filed the complaint commencing this

10

adversary proceeding.

II

Shaw Pittman contends that "the District Court specifically ruled that CHG was legally obligated to further compensate Shaw Pittman for the fees and expenses incurred in defending against challenges by CHG to the services rendered by Shaw Pittman to CHG. *See Capitol Hill Group v. Shaw Pittman* LLP, 313 B.R. 344, 357–58 (D.D.C. 2004)." Shaw Pittman Mem. in Support at 8. This misconstrues the District Court's ruling. The District Court ruled:

> CHG objected to Shaw Pittman's fees in violation of the contract. Therefore Shaw Pittman is entitled to its expenses for work performed in response to CHG's objections. This includes expenses incurred for proceedings in front of the bankruptcy court as well for proceedings in this Court. The Court shall remand the case to the bankruptcy court for a determination of the amount of those expenses and an award of those expenses to Shaw Pittman.

*Capitol Hill Group*, 313 B.R. at 357. The District Court, in other words, did not construe the parties' contract as barring anything other than objections to the specified fee applications. The contract barred objections to the specified fee applications, but did not bar Capitol Hill Group from raising malpractice claims for damages arising from negligence in performance by Shaw Pittman of its services.

Shaw Pittman argues that questioning the quality of Shaw Pittman's services was barred by the agreement. Although Capitol

11

Hill Group *was* barred by the agreement from objecting to the pertinent fee applications on any ground, including based on any alleged defect in Shaw Pittman's services, the agreement did not attempt to address whether Capitol Hill Group was barred from seeking damages against Shaw Pittman for harm caused by any malpractice Shaw Pittman committed in the rendition of those services.  Shaw Pittman, represented by experienced counsel, did not ask Capitol Hill Group for a release of all claims that Capitol Hill Group had arising out of Shaw Pittman's rendition of services through November 2003.  Further, beyond the agreement's unambiguous language, Shaw Pittman was the drafter of the agreement, and cannot complain when the agreement is only reasonably viewed as having a precise and narrow no-objection-provision.

The limited nature of Capitol Hill Group's obligation under the agreement is made evident by the District Court's review of the series of e-mails that led to the agreement being formed:

> [O]n the morning of December 15, Mr. Donald Hartman, an attorney and employee of CHG, sent an email to Mr. Potter, an attorney for Shaw Pittman and primary attorney for CHG's bankruptcy case, with a copy to the owner of CHG, Mr. Shin, stating:
>> Dr. Shin is prepared to offer to pay Shaw Pittman $850,000 today from the Fremont proceeds and give SP [Shaw Pittman] a lien against the Accounts Receivable pending The HBCC closing which we anticipate will occur very soon.
> Joint Appendix at 392 ("CHG Email 1"); Brief of Appellant CHG at 9.
>> Mr. Potter responded with an email sent to Mr. Hartman stating:

12

> Donald: My Management Team accepts the fee
> proposal on two caveats.  One the UCC liens will
> be signed today.  And, of course, **I will not be
> fighting with CHG about my fee applications** (trust
> me, not that I am concerned; and **I am sure you
> probably know, any fights about fee applications
> would be an expense to be paid by CHG**).  Please
> confirm immediately.

Joint Appendix at 392 ("SP Email 2").

> Mr. Hartman responded to Shaw Pittman's offer via
> email, this time with no copy being sent to Mr. Shin,
> stating "Patrick—-It's a deal—-this presupposes the (I
> believe) 5% discount you offered Dr. Shin previously. I
> hope your firm can prepare the liens."  Joint Appendix
> at 394 ("CHG Email 3").  Mr. Potter responded to this
> email stating: "No it does not presuppose a 5% deal.  I
> did not offer it.  That is a mischaracterization.
> Please confirm all fees will be paid.  I will consider
> a discount after my questions put to Dr. Shin on the
> issue have been answered."  Joint Appendix at 400 ("SP
> Email 4").

313 B.R. at 348 (emphasis added).

The District Court, after reviewing those e-mails,

concluded:

> Here the Court finds the meaning of the phrase "I will
> not be fighting with CHG about my fee applications" to
> be unambiguous.  **The plain meaning of the term is
> exactly as it appears; CHG cannot fight with Shaw
> Pittman over its fee applications.**
>                *      *      *
> [E]ven when the Court considers extrinsic evidence only
> one reasonable interpretation is possible.  The pending
> fee application, CHG's agreement to the term in its
> next email, and its simultaneous failure to question
> the meaning or purpose of the no objection term before
> acceptance results in only one reasonable
> interpretation—-that **CHG would not contest Shaw
> Pittman's fee applications for fees billed up to that
> point.**

313 B.R. at 352 (emphasis added).  Nothing Shaw Pittman has

adduced in its motion for summary judgment alters the conclusion

13

that the parties' agreement was unambiguous and only meant that
Capitol Hill Group was not to contest the specified fee
applications.

III

Despite the agreement of December 15, 2003, being clear and
unambiguous, Shaw Pittman contends that the agreement implicitly
carried with it an obligation not to attack via a lawsuit for
malpractice the quality of the services Shaw Pittman had rendered
(and for which fee applications were filed to which Capitol Hill
Group was obligated not to object).

A.

Shaw Pittman has failed to adduce evidence from which the
agreement can be treated as ambiguous, despite its plain
language, with respect to whether in addition to barring
objections to the relevant fee applications, it might also bar a
later lawsuit seeking damages for malpractice committed with
respect to the services covered by the relevant fee applications.
The agreement addressed only objections to the relevant fee
applications.  It did not purport to release Shaw Pittman from
all claims that Capitol Hill Group might have against it, and
Shaw Pittman, as a sophisticated law firm, would have been aware
of that distinction but did not insist on a release.

As discussed previously, however, the agreement gave Shaw
Pittman the assurance that it could obtain an award of the

14

pertinent fee applications without Capitol Hill Group objecting

to those fee applications, and with Capitol Hill Group to be

liable for Shaw Pittman's attorney's fees incurred if Capitol

Hill Group nevertheless objected to the fee applications.  The

immediate award of fees that Shaw Pittman sought to assure by way

of the agreement would permit Shaw Pitman to collect its fees for

services rendered prior to December 2003 without being delayed by

Capitol Hill Group's assertion of claims against it.

B.

Shaw Pittman argues that the agreement not to object to the

fee applications was necessarily an agreement not to challenge

the quality of Shaw Pittman's services because 11 U.S.C. § 330

permits reasonable compensation based on the nature, extent, and

value of the services.  An agreement not to object to a fee

application is limited to not opposing, on whatever grounds are

available, the entry of an order allowing the fees, in the amount

sought, as an administrative claim against the estate.

Accordingly, Capitol Hill Group was barred from objecting to the

relevant fee applications based on the quality of the services

for which fees were sought.  That, however, does not mean that

the quality of services cannot be questioned in another context.

The malpractice claim pursued by Capitol Hill Group was *not*

raised as an objection to the fee applications.  Instead, the

malpractice claim sought damages, far in excess of the attorney's

15

fees that were sought by the fee applications, for harm arising
from alleged malpractice by Shaw Pittman in its representation of
Capitol Hill Group.  The agreement not to object to the specified
fee applications did not bar the later pursuit of malpractice
claims.

This is not, as contended by Shaw Pittman, elevating form
over substance.  By 2006, Shaw Pittman had obtained judgments for
all of its fees and collected those fees, including the fees
incurred in fighting Capitol Hill Group's objection to the fee
applications that were subject to the no-objection-to-fee-
applications-agreement.  It thereby enjoyed the fruits of its
agreement.  When Capitol Hill Group sued in 2007 for malpractice,
the fee awards were a done deal and the substance of the
agreements had been upheld.  Capitol Hill Group's malpractice
lawsuit was barred by res judicata because it would have
effectively nullified the fee awards (including awards of fees
not covered by the no-objection-to-fee-applications-agreement),
but (as discussed in part IV, below) Shaw Pittman's protection
under the doctrine of res judicata was distinct from its narrow
protections under the no-objection-to-fee-applications-agreement.

In any event, Capitol Hill Group's malpractice lawsuit did
not allege harm in the form of fees paid to Shaw Pittman.
Rather, it alleged harm of an entirely different character,
namely, substantial damages arising from the Board of Zoning

16

Adjustment's imposition of a requirement regarding parking spaces that adversely affected the operations of Capitol Hill Group.

IV

That Capitol Hill Group's malpractice lawsuit was dismissed based on res judicata does not demonstrate that the parties' December 15, 2003 agreement barred the lawsuit. The defense of res judicata was distinct from any defense based on the December 15, 2003 agreement.

In the fee litigation in the bankruptcy court, Capitol Hill Group failed to object, on the basis of the acts of malpractice asserted in the malpractice lawsuit, to the fee recoveries sought (including "fees for fees" under Captiol Hill Group's obligation to pay for Shaw Pittman's fees if Capitol Hill Group fought the applications for services that had been billed as of December 15, 2003). Nevertheless, Capitol Hill Group raised broad professional responsibility arguments questioning the quality of Shaw Pittman's representation of it in the bankruptcy case. *Capitol Hill Group*, 569 F.3d at 492. That triggered Capitol Hill Group's "duty to discover the legal errors (if any) committed by Shaw Pittman . . . ." *Id.* Accordingly, res judicata barred the malpractice claims.

Res judicata would have applied only if Capitol Hill Group was aware (through actual or constructive notice) of the malpractice claims at the time of the fee litigation. *Capitol*

17

*Hill Group*, 569 F.3d at 491, 492 n.1.  Shaw Pittman correctly
contends that lack of knowledge of the malpractice is irrelevant
to whether the agreement barred any objection, based on
malpractice, to the fee applications for services rendered
through November 30, 2003.  From that, Shaw Pittman erroneously
reasons, it follows that Capitol Hill Group would have been
barred from pursuing its malpractice claims even if Capitol Hill
Group had become aware, through actual or constructive notice, of
the malpractice only after all of the fee litigation concluded.

Assume that a surgeon performs surgery to remove a diseased
kidney, that the patient disputes the surgeon's professional fees
for removing as excessive, and that when the surgeon sues to
recover the fees, the parties reach an agreement that the patient
will not dispute entry of a judgment for the surgeon's fees in
exchange for the surgeon's agreement to continue providing
medical services.  Later, the patient discovers that in the
surgery, the surgeon had removed the patient's healthy kidney,
leaving the patient with a diseased kidney.  It would be shocking
to think that the parties' agreement regarding not objecting to
fees would immunize the surgeon from the patient's claim for
medical malpractice.  Yet that is the analog of what Shaw Pittman
contends should apply here.  Capitol Hill Group agreed not to
object to the fee applications, and did not thereby agree to
forego any malpractice claim it might later discover.  This

18

supports the conclusion that it was res judicata, not the parties' agreement, that barred the later malpractice lawsuit.

As of December 15, 2003, when the parties reached their agreement calling for Capitol Hill Group not to object to fees for services through November 30, 2003, there is no evidence that Capitol Hill Group was aware of any malpractice by Shaw Pittman. Nevertheless, argues Shaw Pittman, Capitol Hill Group was on constructive notice of the alleged malpractice because, with due diligence, it could have discovered Shaw Pittman's malpractice. *See Capitol Hill Group*, 574 F. Supp. 2d at 152 ("The historic designation argument was based on a municipal regulation[], and therefore was discoverable with due diligence, and could have been asserted as a defense against Shaw Pittman's first fee application in the first hearing.") Shaw Pittman thus contends that Capitol Hill Group must be charged with knowledge of the alleged malpractice as of December 15, 2003.  The fallacy in this argument is that actual or constructive notice is an element of res judicata, and has nothing to do with parties' contractual commitments, as here, regarding the litigation of fee applications.  Moreover, Capitol Hill Group's opportunity to attempt to uncover malpractice through reasonable diligence had not expired as of December 15, 2003.  At best, Capitol Hill Group's opportunity to uncover malpractice through due diligence *in order to avoid the defense of res judicata* (something having

19

nothing to do with the parties' rights under the December 15, 2003 agreement) did not expire until the litigation of Shaw Pittman's final fee application was concluded.  By the time that Capitol Hill Group objected to that final fee application, the Board of Zoning Adjustment had ruled (on January 6, 2004) in favor of Capitol Hill Group, not against it.

Even if Capitol Hill Group *was* aware of Shaw Pittman's malpractice when it entered into the agreement, that does not demonstrate that it was agreeing not to pursue the malpractice claims.  Under those circumstances, all that Capitol Hill Group would have been agreeing to would have been not to object to the applications for fees for services rendered through November 30, 2003, despite being aware of the malpractice claims.  In not objecting to *those* fee applications under those circumstances, Capitol Hill Group would have potentially subjected its malpractice claims to a defense of res judicata if the pre-December 2003 fees were the only fees that Shaw Pittman sought in the case.  However, those were not the only fees that Shaw Pittman sought.  Despite the parties' agreement, Capitol Hill Group remained free to raise the malpractice claims as a defense to the application for fees for services rendered after November 30, 2003.  Because no final judgment had been entered by January 30, 2004, neither res judicata nor collateral estoppel would have barred such a defense had Capitol Hill Group included such a

defense in its objection filed on January 30, 2004, to the
application for fees for services rendered after November 30,
2003.

As the Court of Appeals noted in holding that res judicata
barred the malpractice claims, allowing Capitol Hill Group, after
litigating all of Shaw Pittman's fee applications for services
performed in representing Capitol Hill Group in the bankruptcy
case "to litigate malpractice claims against Shaw Pittman now,
based on the same representation, would nullify the initial
judgment or impair the rights established by Shaw Pittman in the
bankruptcy fee litigation." *Capitol Hill Group*, 569 F.3d at 492.
Although the malpractice lawsuit, if allowed to go forward, would
have nullified or impaired Shaw Pittman's fee awards, the reason
the malpractice lawsuit was barred was not because Capitol Hill
Group had agreed not to object to fee applications relating to
fees for services rendered through November 30, 2003, but because
res judicata protected the fee awards that Shaw Pittman had
secured.  Res judicata may have protected the fruits of the
agreement by barring the malpractice lawsuit, but the agreement
itself did not bar the malpractice lawsuit.  The malpractice
lawsuit having been dismissed based on res judicata, and not
based on the agreement, Capitol Hill Group's lack of success in
the malpractice lawsuit is not a basis for imposing attorney's
fees against Capitol Hill Group pursuant to the parties'

agreement.

V

Shaw Pittman points to this court's ruling of October 22,
2004, made after the first hearing regarding recovery of fees
pursuant to the District Court's remand.  In the oral ruling of
October 22, 2004, this court awarded Shaw Pittman its fees
incurred in litigating the fees billed through November 30, 2003.
The award included attorney's fees for pursuit of avenues of
collection--designed to protect the eventual fee
award--necessitated by the delay engendered by Capitol Hill
Group's having objected to the fees.  In its ruling, the court
reasoned that "[t]he contractual provision is broad enough also
to include any foreseeable consequential damages accruing to Shaw
Pittman, which included the necessity to pursue efforts to
protect collection of the [allowed] fees which had been delayed
. . . . by reason of the allowance being delayed."  Tr. of Oct.
22, 2004 Hearing at 7.  The court further explained:

> Now, if there had not been an objection to the
> attorney's fees, the attorney's fees would have been
> awarded promptly, and Shaw Pittman would have been
> allowed to execute upon that fee award.  It was
> deprived of that right.  It turned to what was next
> available to it by reason of Capitol Hill Group's
> having objected to its attorney's fee application, and
> pursued whatever other collection remedies short of
> having a judgment it could employ.
>         I think that pursuing those collection efforts
> fall within the type of damages that were foreseeable
> by reason of the breach and that Shaw Pittman was
> entitled to pursue recovery of attorney's fees
> incurred, and expenses incurred, by reason of having to

22

pursue that alternative means of securing or promising
to secure collection of its fees.

      *    *    *

[C]ertainly it was foreseeable that Shaw Pittman
would have to turn to seek alternative means to protect
its right to collect that it was being deprived of by
reason of Capitol Hill Group improperly objecting to
its fee application instead of allowing a judgment to
be in place that Shaw Pittman could enforce
immediately.

*Id.* at 27-28.

Shaw Pittman argues that defending against the malpractice
lawsuit was an effort to protect the fees it had collected, and
that the attorney's fees it incurred in defending against that
lawsuit constitute foreseeable consequential damages that Shaw
Pittman is entitled to recover from Capitol Hill Group.  This
misses the meaning of the court's ruling of October 22, 2004.

The ruling of October 22, 2004, dealt with damages arising
from Capitol Hill Group objecting to the fee applications in
violation of the parties' agreement.  In contrast, the attorney's
fees Shaw Pittman incurred in defending against the malpractice
action did not arise from Capitol Hill Group having improperly
objected to the fee applications.  By the time the malpractice
lawsuit was filed, Capitol Hill Group had paid all of the fees
awarded against it.

VI

Shaw Pittman also points to the hearing of April 12, 2006,
in the adversary proceeding it brought against Capitol Hill
Group, at which Shaw Pittman sought assurances that Capitol Hill

23

Group would not pursue any further litigation against Shaw

Pittman, and noted that many issues that Capitol Hill Group still

had "should have been raised at the multitude at, the number,

whatever they were, two, three, four trials, that we had on the

matters throughout the course of 2004 and 2005."   Tr. of Apr.

12, 2006 Hearing at 8.   The court responded that as to issues

that Capitol Hill Group might raise regarding the adequacy of

representation by Shaw Pittman:

> The fact is they could have raised the issue.  They
> didn't.  They're barred, as you say, by res judicata,
> from pursuing it.  If I understand the law correctly.
> There's no need to bring a declaratory judgment
> proceeding to get a declaration to that effect. . . .
> If they were to pursue claims against you after this
> adversary proceeding is dismissed, you've got the
> defense of res judicata, you can file [*i.e.*, serve]
> your Rule 11 motion, file a motion to extend the time
> to answer, and if they don't [move to] dismiss in the
> face of a valid defense of res judicata, then **you're
> back in the sanctions business.**

*Id.* at 8-9 (emphasis added).   Shaw Pittman construes this as

meaning that the sanction of damages would again be available

under the agreement if Capitol Hill Group filed a malpractice

lawsuit challenging the adequacy of the services rendered by Shaw

Pittman as of November 30, 2003.   Specifically, Shaw Pittman

argues that it had never recovered any sanctions other than for

breach of the December 15, 2003 agreement, so the court must have

been referring to recovery of fees pursuant to the agreement.

Instead, what the court was saying was that sanctions would be

available under Rule 11 of the Federal Rules of Civil Procedure

24

(or its analog in Superior Court) because it appeared to the
court that such a proceeding would be barred by res judicata (not
by the parties' agreement of December 15, 2003), and that the
filing of the lawsuit in the face of that defense would not pass
muster under Rule 11.  The court was suggesting that Shaw Pittman
could pursue a Rule 11 motion, and if Capitol Hill Group did not
withdraw its malpractice complaint within the safe harbor period
of Fed. R. Civ. P. 11(c)(2) (or its analog), then Shaw Pittman
would be back in the sanctions business, this time under Rule 11,
whereas previously the sanctions awarded were contractual
damages.

VII

After the fee litigation had concluded, and after Shaw
Pittman had collected all of the fees it was awarded, this court
entered an order directing the parties to show cause why the
bankruptcy case ought not be closed.  Shaw Pittman opposed the
closing of the case because it was concerned that Capitol Hill
Group might pursue claims against it, and it wished to have the
case remain open so that it could seek appropriate relief in this
court (without incurring a reopening fee) if such a proceeding
were brought.  Capitol Hill Group, however, suggested that no
such proceeding would be brought.  As Shaw Pittman observes:

> When last before this Court, through the very same
> lawyers now representing it, CHG stated that "Shaw
> Pittman bases its argument on an unsupported notion that
> CHG, like the proverbial Phoenix, might one day arise

25

> from the ashes and somehow wreak havoc upon Shaw
> Pittman." ("Response of Capitol Hill Group to Motion of
> Patrick Potter to Delay Closing of Case" at ¶5). The
> clear intention of this statement (and other similar
> statements) was to persuade this Court that *unlike* the
> "proverbial Phoenix," CHG would *not* "one day arise from
> the ashes and somehow wreak havoc upon Shaw Pittman."
> *See also* 574 F. Supp. 2d at 151, n. 3.

Shaw Pittman Reply Mem. at 11 (footnotes omitted). Shaw Pittman

contends that Capitol Hill Group should not be permitted to avoid

the result that would have been reached by this court had Capitol

Hill Group attempted to assert its malpractice claims in the

bankruptcy court prior to the closing of the case; allowing it to

do so, according to Shaw Pittman, would reward Capitol Hill Group

for engaging in deception in order to commence the malpractice

action in another court.

Even if Capitol Hill Group engaged in deception (because it

knew that it intended to pursue malpractice claims), that in

itself is not an appropriate ground for awarding fees to Shaw

Pittman for its defense of the malpractice lawsuit that ensued.

Nor does it follow that, had the malpractice lawsuit been

commenced in the Bankruptcy Court, Shaw Pittman would be entitled

to a recovery of attorney's fees under the December 15, 2003

agreement: wherever the malpractice lawsuit was commenced, the

agreement would not have barred the lawsuit (although res

judicata would have), and accordingly the agreement would not

have been a basis for an award of attorney's fees.

What Shaw Pittman appears to be arguing is, first, that if

the malpractice claims had been raised as an objection to the fee
applications for services rendered through November 30, 2003, the
objection would have been barred by the parties' agreement, and
fees for defending against the objection would have been
recoverable.  That may be true, but nothing precluded the
malpractice claims from being raised as an objection to other
fees sought in the case.  More importantly, the narrowly written
agreement does not support what appears to be the second step of
Shaw Pittman's argument, that because an objection to fees for
pre-December 2003 services would have been barred by the
agreement, any malpractice lawsuit asserting claims for damages
for negligent rendition of those services would also be barred by
the agreement.  As discussed previously, the assertion of
malpractice claims for damages (especially those above and beyond
the attorney's fees for which Capitol Hill Group was out of
pocket) although barred by res judicata, was not an objection to
the fee applications, and was thus not barred by the parties'
agreement.

VIII

Based on the foregoing, an order follows denying Shaw
Pittman's motion for summary judgment, and directing it within 14
days to show cause, if any it has beyond the arguments and
submissions it has already made, why summary judgment ought not
be entered against it.

27

[Signed and dated above.]

Copies to: All counsel of record; Office of United States
Trustee.